**Jerry STANSEL,**
**Appellant/Cross–Appellee,**

**v.**

**PERINI ARCTIC CONSTRUCTION, INC., Appellee/Cross–Appellant.**

**Nos. 4330, 4407.**

Supreme Court of Alaska.

Sept. 26, 1980.

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

John F. Rosie, Whiting & Rosie, Fairbanks, for appellant/cross–appellee.

Joseph W. Sheehan, Fairbanks, for appellee/cross–appellant.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER,* BURKE and MATTHEWS, JJ.

OPINION

BURKE, Justice.

The issue in this appeal is whether the superior court erred in granting a motion for summary judgment. *See* Rule 56, Alaska R.Civ.P.

While piloting his single engine aircraft on a flight from Fairbanks to Cordova, Jerry Stansel encountered weather conditions that caused him to make an emergency landing at Isabelle Camp, one of several construction camps along the route of the Trans–Alaska Pipeline. Stansel landed safely on a road connecting the camp and a nearby pipeyard, after being diverted away from the camp's airstrip by Ronald V. Weil-

bacher, an employee of Perini Arctic Construction, Inc. According to Stansel and others who witnessed the incident, Weilbacher threw rocks at the aircraft when it attempted to land on the airstrip.

After landing, the aircraft became stuck when it settled into a snowbank along the edge of the roadway. Although the plane apparently landed unharmed, it was severely damaged when Weilbacher thereafter attempted to pull it out of the snowbank, using a chain attached to a heavy road grader.

In an effort to recover for the damage done to his aircraft, Stansel filed an action in the superior court against Perini, Weilbacher's employer, basing his claim against Perini on the doctrine of *respondeat superior*. According to the complaint, the damage to Stansel's aircraft was a proximate result of conduct on the part of Weilbacher that was negligent, intentional, willful and malicious. Stansel prayed for an award of compensatory and punitive damages, prejudgment interest, his costs and attorney's fees. Perini answered the complaint, denying the allegations thereof and pleading, as an affirmative defense, that Weilbacher was not acting in the scope of his employment at the time of the events complained of.

After the case was at issue, Perini moved for summary judgment, contending that it could not be held vicariously liable for Weilbacher's actions. Conceding that there was conflicting evidence as to the events that had occurred, Perini asked the superior court to make a number of assumptions in ruling on its motion, stating:

[F]or purposes of this motion only ... Perini assumes the facts involved in a light most favorable to the plaintiff. Thus, it could be said that Weilbacher deliberately threw rocks at plaintiff's airplane and prohibited plaintiff from landing on a private airstrip located at Isabel [sic], Alaska. Further, that plaintiff ultimately landed his airplane on a private road adjacent to Isabel [sic] Camp and that defendant [sic] Weilbacher negligently or maliciously damaged plaintiff's

aircraft in towing the aircraft from a stuck position on the road. Assuming all these facts to be true, defendant Perini ... argues that there is no theory of law under these stated facts which would hold it vicariously liable.

The thrust of Perini's argument was that an employer cannot be held vicariously liable for acts of an employee that are outside the scope of his employment. *See Luth v. Rogers and Babler Construction Co.*, 507 P.2d 761 (Alaska 1973); *Fruit v. Schreiner*, 502 P.2d 133 (Alaska 1972). The superior court agreed, concluding that there was no relationship between the enterprise being conducted by Perini at Isabelle Camp and the actions of Weilbacher, and that Perini, therefore, could not be held vicariously liable for Weilbacher's actions. *Id.* The court then entered summary judgment in favor of Perini.

Careful study of the arguments of the parties and the record on appeal has convinced us that the court erred in ruling as it did.

C. W. Kilfoyle, a camp security officer, observed the aircraft on the road shortly after Weilbacher unsuccessfully attempted to pull it from the snowbank. Kilfoyle testified in his deposition that when he saw it, the aircraft's tail was "partially blocking the road." He further stated, "I instructed someone to put blockades up there so they wouldn't run into it with trucks because it was still sticking out in the road. Still blocking the highway to some extent. It was an obstruction."

Weilbacher, an equipment operator, was employed by Perini to do maintenance work at Camp Isabelle. His duties included maintenance of the runway at the camp's airstrip and plowing snow from the road where Stansel landed. According to his deposition, he "was blading that road once a day," at the time. He stated in his deposition:

I was still put on camp maintenance because they were having a little bit of boss trouble, you know, getting the foremans [sic] and hiring them and bringing some down from Delta at the time. So I was

just more or less on my own. I'd been there longer than anybody. I knew more of what was going on than anybody else did.

At another point in his deposition he gave the following testimony:

Q. Who was your foreman then?

A. I never had no foreman.

Q. Who was your supervisor?

A. Pete Beard.

Q. Without a foreman did you consider yourself the man in charge?

A. Yes.

Q. I mean you didn't have to go to anybody to ask for instructions to do something?

A. Right.

Q. You could do what you wanted to?

A. Right.

Q. And you had authority to do that?

A. Right.

Q. And that was vested in you by the superintendent?

A. Yes, he told me.

Q. And that was Mr. Beard?

A. Pete Beard told me.

This evidence, we believe, particularly that pertaining to his apparent responsibility for keeping the road clear of snow and, presumably, other obstructions to its use by camp traffic, was sufficient to avoid summary judgment on the question of whether Weilbacher was acting within the scope of his employment when he attempted to pull the aircraft from the snowbank, thereby causing the damage complained of. Accordingly, we conclude that the superior court erred in granting Perini's motion for summary judgment. The motion should have been denied under our holdings in *Luth v. Rogers and Babler Construction Co.*, 507 P.2d 761 (Alaska 1973), and *Fruit v. Schreiner*, 502 P.2d 133 (Alaska 1972).

The judgment of the superior court is REVERSED.